IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DENNIS EARLE CRISP, | ) | Civil Action No. 3:09-1563-HFF-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq.,

DSC, concerning the disposition of Social Security cases in this District.  Plaintiff brought this action

pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of

Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

### ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on March 3, 2005, alleging disability since July 20,

2004. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing

before an administrative law judge ("ALJ").  After a hearing held on March 21, 2008, the ALJ issued

a decision dated September 4, 2008,  denying benefits and finding that Plaintiff was not disabled.

The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in

the national economy which Plaintiff could perform.

Plaintiff was forty-one  years old at the time of the ALJ's decision.  He has the equivalent of

a high school education (GED) with past relevant work as a mechanic technician. Plaintiff alleges

disability due to depression and facet arthropathy.

The ALJ found (Tr. 14-19):

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since July 20, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).

3.    The claimant has the following severe combination of impairments: depression and facet arthropathy  (20 CFR  404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, he is to avoid more than occasional balancing, climbing, stooping, kneeling, crouching, crawling or kneeling; and he is restricted to simple routine repetitive tasks, with no more than frequent interaction with the general public.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on November 28, 1966 and was 37 years old, which is defined as a younger individual aged 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), and 404.1566).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2004, through the date of this decision (20 CFR 404.1520(g)).

On April 17, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on June 12, 2009.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

On March 19, 2002, Dr. Robert E. LeBlond (a physical medicine and rehabilitation specialist) examined Plaintiff for complaints of back pain that began after a work injury in January. He noted that Plaintiff had limited extension of his back, but full range of neck motion and normal strength, sensation, and reflexes. Dr. LeBlond diagnosed a mechanical back injury and recommended conservative management. Tr. 298. Dr. LeBlond continued to provide Plaintiff with conservative treatment of his back pain. After a functional capacity evaluation, Dr. LeBlond opined that Plaintiff had reached maximum medical improvement on June 28, 2002. He assigned Plaintiff a five percent

3

impairment rating, and opined that Plaintiff was limited to lifting 55 pounds and could do unlimited standing and walking. Tr. 287-288. Dr. LeBlond continued to provide Plaintiff with injections and medications. Tr. 275-285. On May 20, 2003, treatment notes from Dr. Charles Gaillard indicate that Plaintiff sustained burns on his legs while burning weeds in his yard. Tr. 314.

On December 2, 2003, Plaintiff reported he had been laid off from his job. He described his pain as the same to slightly worse. Dr. LeBlond referred Plaintiff to additional physical therapy and recommended a home exercise program. Tr. 273. On February 24, 2004, Plaintiff reported that he was working and had a marked worsening of his pain. Examination revealed full strength, intact sensation, normal reflexes, and an antalgic gait and station. Tr. 272. On March 23, 2004, Plaintiff reported an exacerbation of his pain, but it was noted that there was no neurologic decline since his last visit. Tr. 271.

An MRI in April 2004 showed some lumbar disc bulging with compromise of the nerve root. Tr. 269. Dr. LeBlond administered another injection on April 20, 2004. Tr. 268. Treatment notes dated July 13, 2004 indicate that Plaintiff was still working, but he was "getting overwhelmed by the physical and mental demands" of work. Dr. LeBlond diagnosed anxiety and depression due to ongoing pain and work stress. Tr. 266.

Plaintiff was treated in the emergency room on July 14, 2004, for complaints of back pain affecting his job and personal relationships. He denied any neck pain. Examination revealed that Plaintiff had full muscle strength, coordination, sensation, and gait. He was alert and oriented, there was no evidence of abnormal thought process, and his remote and recent memory were intact. Plaintiff was diagnosed with acute stress reaction to his underlying medical condition. He was advised to obtain follow-up treatment. Tr. 179-180.

4

Treatment notes from Dr. Gaillard dated July 15, 2004, state Plaintiff was not taking his anti-depression or thyroid medication.  Dr. Gaillard prescribed Zoloft for depression.  Tr. 313. Beginning in September 2004, Plaintiff received mental health treatment from John Burton, Ed.D. Tr. 126-129.  On September 14, 2004, examination revealed that Plaintiff had full motor strength, intact sensation, and a slightly antalgic gait.  Dr. LeBlond stated that Plaintiff was neurologically stable and his depression appeared somewhat improved.  He did not think that Plaintiff could return to work "at this point."  Tr. 263.

On October 6, 2004, Dr. Burton wrote that Plaintiff was "a lot better mentally."  Tr. 128.  Dr. LeBlond noted that Plaintiff's depression was stable with medication on November 2, 2004.  Plaintiff had full motor strength and equal deep tendon reflexes.  Dr. LeBlond assessed chronic degenerative low back pain with stable neurologic examination.  He encouraged Plaintiff to exercise.  Tr. 261.

On January 11, 2005, Plaintiff reported to Dr. Burton that he had no health insurance because he had been fired from his job.  He said he was still irritable, but felt mentally more stable.  Tr. 126. The same day, Plaintiff complained of neck pain to Dr. LeBlond who noted that Plaintiff had intact leg strength; negative straight leg raise testing; full range of shoulder motion; a mildly antalgic gait with use of cane; equal deep tendon reflexes; full strength, sensation, and reflexes in his upper extremities; and only mildly reduced neck range of motion.  Tr. 260.  A cervical spine MRI on January 12, 2005 revealed no fractures or misalignments.  Tr. 130.

On March 29, 2005, Plaintiff had intact strength and equal reflexes in his legs.  Dr. LeBlond assessed chronic degenerative low back pain and noted that Plaintiff was neurologically stable.  Tr. 256.  On April 26, 2005, Plaintiff was tender from T8 to L5, but had full range of movement.  Dr. LeBlond assessed low back pain with a mechanical myofascial component.  Tr. 255.

5

On May 21, 2005, Dr. Aimee Duffy performed a consultative examination. Tr. 147-151. Plaintiff complained of back pain and arthritis. He said he had been diagnosed with Graves' disease in 1994, which was asymptomatic other than occasional tremors. He reported anxiety and mental status changes including being more forgetful and having emotional lability. Tr. 147. He complained of headaches, constant neck pain, and suicidal thoughts. He had difficulty with dressing, bathing, going to the bathroom, and attending to his personal hygiene. Plaintiff said he did no standing, did very minimal walking, used a cane, did no lifting, and did no activities around the house. Tr. 149.

Dr. Duffy's examination revealed that Plaintiff ambulated with a significant limp and used a cane. When she encouraged Plaintiff to not use his cane, he did so without much difficulty. Plaintiff had no edema or swelling of his lower extremities, normal grip strength, no difficulties with coordination and normal range of motion of his fingers, elbows, and forearms. During all range of motion exercises, Plaintiff displayed significant grimacing and "appeared overly dramatic." Shoulder range of motion testing was done with significant difficulty. Tr. 150. Plaintiff was unable to perform walking on his heels or toes. Plaintiff was tearful during the examination and seemed to have poor attention. Muscle strength, sensation, and reflexes were normal. Dr. Duffy remarked that Plaintiff seemed overly dramatic during physical examination. Tr. 151

On June 8, 2005, Dr. Spurgeon Cole performed a consultative examination. Plaintiff drove himself to the testing center. He used a cane to ambulate and moved slowly. He did not appear to be in any acute emotional distress. Plaintiff's affect was constricted and his mood was depressed. He was very vague and could never give Dr. Cole "an exact straight answer." Plaintiff had served three and one-half years in prison for breaking into a rock quarry and was still on probation. He had

a long history of alcohol and drug abuse.  Dr. Cole thought that Plaintiff's vocabulary and speech pattern suggested low-average cognitive ability.  Plaintiff denied hallucinations or delusions and was able to carry on a meaningful conversation.  He reported he took care of most of his personal needs. He liked to walk in the yard and occasionally visited friends and neighbors.  Plaintiff had changed the starter on his wife's car, but it took him a long time.  He planted a few tomato plants and used a riding mower to cut the lawn.  Plaintiff was able to define the words "enormous" and "terminate," spell "world" backwards and forwards, do serial threes, and could multiply 2 x 12 and 2 x 24.  Dr. Cole diagnosed major depression (moderate) and polysubstance in remission.  He noted that Plaintiff concentrated adequately during the interview, but thought that Plaintiff's social functioning was moderately poor.  Tr. 151-154.

On June 10, 2005, Dr. Seham El-Ilbary, a State agency physician, reviewed Plaintiff's medical record.  He opined that Plaintiff retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl; and he should avoid concentrated exposure to hazards.  Tr. 155-162.

On June 18, 2005, Plaintiff presented to the emergency room with a self-inflicted stab wound to his left forearm.  He had initially gone to the ER the night before, but left after he got tired of waiting.  He complained of being unable to work because of chronic low back pain.  He admitted to drinking alcohol the previous day for the first time in a year and one-half.  Toxicology was positive for cannabis and cocaine.  His arm laceration was sutured and he was admitted to the hospital for suicidal ideation.  Tr. 163-164.

On June 22, 2005, Plaintiff underwent an intake assessment at the Anderson-Oconee-Pickens ("AOP") Mental Health Center.  Plaintiff described a chaotic upbringing.  He was diagnosed with

anxiety, depression, and post-traumatic stress disorder.  His GAF was 50 (indicating "some impairment").  Tr. 227-229.

On June 23, 2005, Plaintiff reported to Dr. Gaillard that he had started drinking and had smoked marijuana and crack the previous weekend.  Plaintiff complained of a lot of pain, but was not taking his pain medication.  He appeared severely depressed and was crying.  Dr. Gaillard changed Plaintiff's medications.  Tr. 303.  On June 30, 2005, Plaintiff was noted to be doing much better after resuming his medication.  Tr. 302.

On June 23, 2005, Dr. Craig Horn, a state agency psychologist, reviewed Plaintiff's records. He opined that Plaintiff's depression and anxiety resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation.  Tr. 200.  Dr. Horn found moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, and moderate limitations in his ability to interact appropriately with the general public. He thought that Plaintiff could carry out very short and simple instructions; make simple work-related decisions; and respond appropriately to changes in a routine work setting.  Dr. Horn opined that Plaintiff would perform best in situations that did not require on-going interaction with the general public.  Tr. 186-202.  On July 15, 2005, notes from AOP Mental Health indicate that Plaintiff was diagnosed with major depression with psychotic features and PTSD.  A GAF score of 35 was assigned.  Tr. 226.

On July 26, 2005, Plaintiff reported that his depression was better.  Dr. LeBlond noted that Plaintiff had an antalgic gait and back tenderness, but had full motor strength, equal (but decreased) deep tendon reflexes, negative straight leg raise testing, and no atrophy.  Dr. LeBlond noted that

Plaintiff's pain medications had been adjusted and were working better.  Plaintiff's depression was assessed as stable.  Tr. 254.

On September 29, 2005, Dr. Dale Van Slooten (state agency physician), opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards.  Tr. 204-211.  On November 14, 2005, Dr. Debra Price (state agency psychologist) opined that Plaintiff was able to carry out simple tasks for two hours at a time; relate appropriately to co-workers and supervisors; and would be best suited for work with limited public contact.  She also thought that he could adapt to workplace changes and avoid normal hazards.  Tr. 233-249.

On December 13, 2005, Dr. LeBlond noted that Plaintiff was walking with a cane, but had intact strength and normal reflexes.  He noted some altered sensation and some reduced range of motion.   Tr. 251.  On March 20, 2006, Dr. Gaillard wrote that Plaintiff had sustained minor injuries in a motor vehicle accident, but was otherwise doing well.  Tr. 330.  Dr. LeBlond provided Plaintiff with periodic injections in 2006 and 2007.  Tr. 331-349.  On May 9, 2006, Dr. LeBlond noted that Plaintiff had 5/5 strength, altered sensation diffusely, and equal (but diminished) deep tendon reflexes.  Plaintiff reported that medication helped with pain and that he had no medication side effects.  Tr. 349.  Dr. LeBlond wrote that Plaintiff was neurologically stable on July 18, 2006.  Plaintiff reported that his workers' compensation claim had settled, and he had applied for Social Security Disability.  Tr. 347.  In response to an October 5, 2006 letter from his attorney asking whether Plaintiff could perform any gainful activity secondary to his depression and anxiety, Dr. Gaillard answered "No."  Tr. 301.

9

Plaintiff reported mild improvement three months after a February 2007 epidural injection. He said that his psychiatric medications kept him functional.  Dr. LeBlond noted that Plaintiff had some deconditioning issues and recommended activity as tolerated and a TENS unit.  Tr. 337.  On September 11, 2007, Dr. LeBlond recommended that Plaintiff have a nerve conduction study. Tr. 334.  An abdominal CT scan performed on December 20, 2007, showed no evidence of diverticulitis. Tr. 332.

Dr. Lary R. Korn examined Plaintiff on April 22, 2008.  Plaintiff complained of constant pain everywhere, as well as extremity numbness and tingling.  He said he used a wheelchair to go out, but usually stayed on the couch or in bed.  Plaintiff's wife reported he played with his children for only five to ten minutes at a time, at which point Plaintiff corrected her and stated this was while he was on the couch.  Plaintiff stated he lost his vision due to a long history of Graves' disease.  He complained of depression, mood swings, and irritability.  He denied alcohol use, and stated he had lost his driver's licence in 2007 for "refusal to comply."  Plaintiff could not spell "world" correctly and could not perform serial three subtractions.  He did not know the date, day of the week, and had to give much thought to name the President of the United States.

Plaintiff arrived at the examination in a wheelchair and used a crutch in his right arm.   His upper and lower extremity examinations were of "very limited value" because he presented as very limited in his movement, although his muscle tone appeared "quite good and excellent."  Dr. Korn could not discern any atrophy.  Plaintiff had intact digital dexterity.  He would not stand with an erect posture or allow his knees to be fully extended in the seated position.  Waddell's signs (used to show malingering or pretending) were "all severely positive."  Dr. Korn diagnosed significant mental health issues and chronic pain syndrome with substantial psychological component.  He wrote that

he could not make any comments on physical limitations based on the objective findings and opined that Plaintiff's mental health would be the most important part of a disability determination. Tr. 351-354.

On April 29, 2008, Dr. Brian Keith performed a psychological examination. Plaintiff said that his wife had to help him with his hygiene needs and he remained on the couch or in bed most of the day. The family subsisted on a daughter's disability check. Plaintiff reported being abused as a child. He admitted to being arrested over twenty times and that he spent three years in prison. He last used inhalants (marijuana and cocaine) in 2007. Plaintiff said that he last worked as a supervisor at Orian Rugs in 2005, where he worked for eight years. Plaintiff's affect was restricted and his psychomotor functioning was slow. He said he did not know the day of the week. On IQ testing, Plaintiff obtained a Full Scale IQ of 69, a Verbal IQ of 75, and a Performance IQ of 67. Dr. Keith diagnosed depression and a history of drug and alcohol abuse in remission since July 2007. He thought that Plaintiff had a limited range of social functioning. Dr. Keith noted that Plaintiff's overall cognitive skills appeared to fall within the mild and mentally disabled through borderline range, but that Plaintiff should be able to complete simple activities and one or two-step activities, and to follow basic directions. Tr. 361-365.

On a medical source statement of ability to do work-related activities, Dr. Keith indicated that Plaintiff had moderate limitations in his ability to understand and remember complex instructions, carry out complex instructions, and make judgment on complex work-related decisions. Dr. Keith thought that Plaintiff had mild limitations in dealing with simple instructions and social interaction and noted that Plaintiff previously worked for eight years at the same job. Tr. 366-367.

11

On July 18, 2008, Benson Hecker, Ph.D., reviewed the documentary record and interviewed Plaintiff at the request of his attorney. Tr. 103-124. Plaintiff arrived at the appointment in a wheelchair. He reported whole body spasms, visual difficulty, pain all over his body, and difficulty performing any activities. Tr. 120-122. Based on Plaintiff's report of chronic severe pain, Dr. Hecker opined that Plaintiff was unable to work. Tr.124.

## HEARING TESTIMONY

Plaintiff testified that he injured himself on the job, but continued to work until his doctor took him out of work in July 2004. He described back pain that went into his legs, and numbness in his hands. Tr. 393-394. Plaintiff said he also had Graves' disease, depression, and anxiety. Tr. 395-396. He reported that he took Cymbalta for depression and that it helped a lot. Tr. 397. Plaintiff complained of fatigue, weakness, forgetfulness, and low energy. Tr. 398, 402. He stated he spent all day lying down because of back pain. He testified he had used a wheelchair for a year and had used a cane before that. He reported that he could only walk for very short distances. Tr. 400. Plaintiff testified that he lost his license the previous summer for DUI, but had not had alcohol since then. Tr. 404. He said it had been three or four years since he used illegal drugs. Tr. 405.

Plaintiff's wife also testified at the hearing. She described his problems with Graves' disease, depression, and anxiety. Plaintiff's wife also testified about the medications he took for pain. Tr. 378-379. She said that Plaintiff had trouble concentrating, constantly repeated himself, and that she could not get a job because she had to care for him twenty-four hours a day. Tr. 381.

## DISCUSSION

Plaintiff alleges that ALJ: (1) failed to honor the treating physician's rule; (2) failed to address his nonexertional impairments; (3) improperly discredited his subjective complaints of pain; and (4)

improperly disregarded Dr. Benson Hecker's evaluation that he was disabled. The Commissioner contends that substantial evidence[1] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A.    Credibility

Plaintiff alleges that the Commissioner improperly discredited his subjective complaints of pain. He argues that because the ALJ found that he (Plaintiff) did have some impairment that could have resulted in pain, he has presented sufficient information to support his subjective pain testimony. Plaintiff's Brief at 15. He also argues that Plaintiff had a solid work history of almost 7 years at Orion rugs until his condition worsened, and that when a claimant has a substantial, continuous work record, his testimony is entitled to substantial credibility.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain

---

[1]Substantial evidence is:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence. The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. The medical record, as detailed above, supports the ALJ's conclusion that Plaintiff could perform a range of light work. Examinations consistently showed that Plaintiff was neurologically stable and intact, and that he had full or near full range of motion, full muscle strength, equal reflexes, normal coordination, normal or near normal sensation, and no muscle wasting. Tr. 255, 260, 261, 263, 272. The ALJ also noted the evidence of Plaintiff's malingering during the consultative examinations with Dr. Duffy in May 2005 (Tr. 149-150), Dr. Cole in June 2005 (Tr. 153-154), and Dr. Korn in April 2008 (Tr. 351-354). See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003)(an ALJ may discount a claimant's allegations if there is evidence that he or she was a malingerer or was exaggerating symptoms for financial gain); Jones v. Callahan, 122 F.3d 1148 (8th Cir.1997)(finding that objective medical evidence of the claimant's physiological impairments, coupled with evidence that the claimant exaggerated the severity of his symptoms, supported the ALJ's finding that the claimant's subjective complaints of back pain were not fully credible); see also Wagner v. Apfel, No. 98-2260, 1999 WL 1037573, at *5 (4th Cir. Nov. 16, 1999) (upholding finding of no disability where plaintiff testified that he suffered from severe

mental illness, but the ALJ accorded his testimony less weight after determining his testimony was not credible).

Plaintiff's credibility was also lessened by inconsistencies between Plaintiff's statements and the record.  See Mickles v. Shalala, 29 F.3d at 930.  Although Plaintiff testified that he was unable to do anything but lie on the couch or in bed all day (Tr. 351, 361), he reported to Dr. Cole that he liked to walk in the yard, had grown some tomatoes, visited friends and neighbors, mowed the lawn, and had recently replaced the starter in his wife's car (Tr. 153-154).  He said he had to use a wheelchair, yet Dr. Korn noted that Plaintiff had excellent bulk and no signs of edema in his lower extremities.  The ALJ also discounted Plaintiff's credibility based on his felony conviction for breaking and entering.

Contrary to Plaintiff's argument, the ALJ did not err in failing to find Plaintiff credible based on Plaintiff's work history.  Where a claimant has worked steadily for a number of years and where "[t]here is no evidence of malingering..." his credibility is enhanced.  Lanning v. Heckler, 777 F.2d 1316 (8th Cir. 1985)(dictum); see also Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971); Nanny v. Mathews, 423 F. Supp. 548, 551 (E.D.Va. 1976).  While Plaintiff did work at one job for approximately seven years, he has numerous years in which it appears he did not work.  In response to the direction on the Disability Report to list his work history for the past fifteen years, Plaintiff only listed one job (the one discussed above - from October 1997 to July 2004).  His earnings history indicates no earnings from 1992 to 1996, and what appears to be significantly less than full-time work (assuming minimum wage earnings) before that (e.g., Plaintiff earned $63 in 1989, $374 in 1990, and $819 in 1991).  See Tr. 56-61.

B.    Treating Physician

Plaintiff alleges that the ALJ erred in failing to honor the treating physician's rule. He argues that Dr. Gaillard's opinion is entitled to controlling weight because he was Plaintiff's family physician from March 26, 2003 through January 9, 2008, and that Dr. LeBlond's opinion is entitled to controlling weight because he treated Plaintiff from July 11, 1985[2] through February 5, 2008.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist

---

[2]The first treatment note in the record from Dr. LeBlond is dated March 19, 2002, and is captioned "New Consultation." Tr. 297.

16

in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical

opinion. SSR 96-2p.

Dr. LeBlond referenced and adopted a functional capacity evaluation that indicated that

Plaintiff was capable of performing medium-level work. The ALJ's decision to discount this

opinion is supported by substantial evidence because it was rendered well before Plaintiff's alleged

onset date. Further, even if the ALJ had given it controlling weight, the opinion was that Plaintiff

could perform medium work. If an individual can do medium work, that person also can perform

light work. See 20 C.F.R. § 404.1567(c).[3]

The ALJ's decision to discount Dr. Gaillard's opinion of disability is also supported by

substantial evidence. Dr. Gaillard's opinion was merely a response of "No" to counsel's October 5,

2006 letter asking whether Plaintiff could perform gainful activity secondary to his depression and

anxiety. Tr. 301. As the ALJ correctly noted (Tr. 18), a conclusory opinion of disability such as this

is beyond Dr. Gaillard's known expertise. Such a conclusory opinion is not controlling since the

issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the

Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs.,

26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir.

2002)(statements that a claimant could not be gainfully employed are not medical opinions, but

opinions on the application of the statute, a task assigned solely to the discretion of the

---

[3]Although Dr. LeBlond noted on September 14, 2004 that he did not think that Plaintiff could "return to work at this point," Plaintiff has not argued that this is an opinion of disability. Further, such a statement is also conclusory and on an issue reserved to the Commissioner. Additionally, the job to which Plaintiff wanted to return was at the medium to heavy exertional level (see Tr. 410)

Commissioner); <u>King v. Heckler</u>, 742 F.2d 968 (6th Cir. 1984); <u>Montijo v. Secretary of Health & Human Servs.</u>, 729 F.2d 599, 601 (9th Cir.1984).

Dr. Gaillard's opinion is not consistent with his own treatment notes in which he never noted that Plaintiff was limited in any way.  Tr. 301-314, 330.  His notes reflect that Plaintiff was doing much better on June 30, 2005, after Plaintiff became compliant with his medications.  Tr. 302.  On March 20, 2006, after Plaintiff sustained minor injuries in a motor vehicle accident, it was noted that he was otherwise doing well.  Tr. 330.  <u>See</u> <u>Montgomery v. Chater</u>, 1997 WL 76937, at *1 (4th Cir. 1997)(ALJ's finding that treating physician's opinion was not persuasive upheld, in part, because his opinion was unsupported by contemporaneous treatment records); <u>Branum v. Barnhart</u>, 385 F.3d 1268, 1274-1275 (10th Cir. 2004)(upholding rejection of treating physician's opinion, in part, because the physician saw Plaintiff infrequently and the only treatment provided was medical prescriptions).

Contrary to Plaintiff's argument, the ALJ did not err in not articulating all the factors provided in 20 C.F.R. § 404.1527(d)(1-6).  While 20 C.F.R. § 404.1527(d) provides that the ALJ will consider these factors, there is not a requirement that the ALJ expressly articulate them in the decision.  <u>See</u> 20 C.F.R. § 404.1527(d).  Further, the ALJ did expressly note significant conflicting evidence in discounting Dr. Gaillard's opinion.

C.     <u>Nonexertional Impairments/Hypothetical to the VE</u>

Plaintiff alleges that the Commissioner failed to address his nonexertional impairments.  Specifically, he argues that he failed to make any determination as to whether his nonexertional impairments would affect his ability to complete a workday or workweek.  The Commissioner contends that the ALJ properly considered Plaintiff's nonexertional impairments in determining that Plaintiff retained the residual functional capacity ("RFC") to perform simple routine

18

repetitive tasks with no more than frequent interaction with the general public, despite his impairments. Additionally, the Commissioner argues that the ALJ reasonable took into account the entire record in evaluating Plaintiff's nonexertional impairments.

A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not. See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a. Every nonexertional condition does not, however, rise to the level of a nonexertional impairment.

The ALJ properly considered Plaintiff's exertional and nonexertional impairments in light of all of the evidence. He specifically stated that he considered all of Plaintiff's symptoms which were consistent with the objective medical evidence, discussed the evidence showing conservative mental health treatment, noted Plaintiff's improvement when he took his medication, noted the extensive evidence of Plaintiff's malingering; and evaluated the "intensity, persistence, and limiting effects of his symptoms" on "his ability to do basic work activity." Tr. 15-16, 17-18. There is no evidence that medical providers found that Plaintiff suffered from any limitations from Graves' disease as long as he took his prescribed medication. The ALJ found that the mental functional assessment by the state agency psychologists (who determined Plaintiff was restricted to simple routine tasks and no ongoing public interaction) were consistent with other medical evidence of record. Tr. 18, see Tr. 188, 235. He found that Plaintiff's severe mental impairment of depression resulted in Plaintiff being restricted to simple routine repetitive tasks with no more than frequent interaction with the general public. Tr. 17.

Plaintiff also argues that the ALJ erred in failing to discuss why he rejected the VE's answer to the ALJ's second hypothetical. In his first hypothetical, the ALJ asked the VE to consider a

claimant of Plaintiff's age, education, and work history who would be limited to light work, could perform all postural activities occasionally, should avoid concentrated exposure to hazards such as machinery or heights, and was limited to routine repetitive tasks with no required ongoing interaction with the public (which the ALJ interpreted as unskilled work limited to frequent interaction with the public). In response, the ALJ found that Plaintiff could perform the jobs of cafeteria attendant, housekeeping, and cashier. In his decision, the ALJ found that Plaintiff had the RFC as described in this hypothetical and found (based on the VE's testimony) that Plaintiff could thus perform a significant number of jobs in the national economy. The ALJ then asked the VE to consider a second hypothetical in which the claimant had the same restrictions as in the first hypothetical, but did not have the concentration, persistence, and pace to do even simple routine repetitive tasks for two hour periods. In response, the VE said that there would be no work the claimant could perform. Tr. 412.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Here, the ALJ was not required to accept the answer to the second hypothetical because it reflected impairments that were not supported by the record.

D.     Opinion Evidence

Plaintiff asserts that the ALJ improperly disregarded Dr. Hecker's evaluation that he was disabled. He argues that Dr. Hecker relied on Plaintiff's complete medical history, education, work history, and personal interview to evaluate and form an opinion that Plaintiff's impairments, limitations, continuing pain, and emotional symptoms caused him to be unable to perform any

substantial gainful activity existing in significant numbers.  The Commissioner argues that the ALJ was entitled to reject Dr. Hecker's conclusion regarding Plaintiff's ability to work because a vocational counselor is not considered an acceptable medical source and Dr. Hecker's opinion was clearly based on his own assessment of the medical evidence.

Although Dr. Hecker opined that Plaintiff could not perform substantial gainful activity, he is a vocational counselor or consultant.  He is not an "acceptable medical source" and instead is considered a non-medical other source along with teachers, spouses, relatives, and friends.  See SSR 06-03p; 20 C.F.R. §§ 404.1513(a)(d), and 404.1527.  An ALJ is not obligated to evaluated a vocational counselor's opinions using the factors in 20 C.F.R. § 404.1527(d)(1-6).  Further, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

Additionally, the limitations found by Dr. Hecker exceeded those found by Plaintiff's treating and examining physicians.  Dr. Hecker's opinion that Plaintiff could not work is also an opinion on an issue reserved to the Commissioner and is not entitled to any special weight or significance. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir.1994).

Plaintiff also argues that there is no evidence that the evaluations by Drs. Korn and Keith, on which the ALJ relied, were as extensive as that performed by Dr. Hecker.  To the contrary, while Dr. Hecker merely appears to have given his interpretation of Plaintiff's medical record and listened to Plaintiff's recitation of his physical and mental symptoms, Dr. Korn (who is a physician unlike Dr. Hecker) conducted a medical examination.  He also conducted mental status testing.  Dr. Keith,

21

unlike Dr. Hecker, conducted IQ testing.  He also completed a medical source statement of ability to do work-related activities in which he found specific limitations on Plaintiff's ability to work.  Dr. Hecker merely concluded that Plaintiff could not work.  Further, Dr. Hecker appears to have based his opinion in large part on Plaintiff's subjective complaints.  As discussed above, the ALJ properly discounted Plaintiff's credibility.

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence.  This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra.  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

February 16, 2011
Columbia, South Carolina

22